## BLACKWELL *versus* THOMPSON.

1. In a *qui tam*, action for voting at an election, without qualifications, held,—
1st. That the act of voting at an election is not complete, until the ballot is put into the box, when the name of the voter is also entered on the list, kept by the clerks.

2d. That no forfeiture is incurred, by voting without qualification, unless the voter's name be inserted on the list of persons voting.

3d. That a voter's name, on the list of person's voting, is *prima facie* evidence of his having voted.

4th. That the insertion of a voter's name, on such list, is not the vote, but the highest evidence of the vote—and such list must be produced, or its loss or destruction shewn, before parol testimony of the fact of voting, is admissible.

Blackwell, the plaintiff in error, commenced a *qui tam* action, in Morgan Circuit court, to recover of the defendant, the penalty, prescribed by law, for voting at an election, without the necessary qualifications.—
In support of his action, the plaintiff produced, as a witness, one of the managers of the election, into whose possession, the list of voters, kept by the clerks, and also, the ballots, had been placed : but, who could not tell what had become of the said list, having destroed the ballots. He also offered to prove, by parol, the fact of the defendant having voted, which the court below refused to admit ; and, by a bill of exceptions the correctness of that decision, was here presented.

*Hopkins*, for plaintiff—*Thornton, contra.*

TAYLOR, J.—This is a *qui tam* action, brought by the plaintiff in error, against the defendant, to recover the penalty prescribed by the statute, for voting at an election, withsut being legally qualified.

The error assigned, is the rejection of evidence, offered in the Circuit court, as stated in the bill of exceptions.

The evidence offered and rejected, was intended to prove, that the defendant did vote. A witness was introduced by the plaintiff, who testified that he had been a manager of the election; that the lists of the names of the voters, taken by the clerks, as required by law, as also the numbered tikets, were taken possession of, by him, after the election; that he handed the lists of the names of the voters, to his brother, a young man, living in his house, and requested him to put them where they could not be compared with the tickets.—That, after having kept the tickets, for the length of time prescribed by law, he destroyed them; but, as to the lists of voters, he had not seen them, since he handed them to his brother, to be put away, just after the election. He said, that no inquiry had been made of him, for the lists, before the time of giving in his testimony, and he had made no search for them; and, he would not say, that they were not among his papers at home; but that it was most probable, that he should have seen them, if they were in his possession. The plaintiff, also, introduced the young man, to whom the manager stated he had handed the lists of votes—who said, that he had no knowledge of them; nor did he remember that his brother had ever handed them to him. The plaintiff then offered to prove the fact of voting, by parol testimony, and the evidence was rejected.

The law provides, "that the County courts respectively, at the term next preceding the day of any election, shall appoint three inspectors, [or managers] to superintend the election," &c. " That the said

inspectors, shall appoint two persons, to act as clerks whose duty it shall be to take down, in writing, on separate lists, the name of every person voting.

"The clerks and inspectors of every such election, shall, before they proceed to business, swear, faithfully to perform their duties, at such election.

"Every person, who, by law, is entitled to vote for representatives to the general assembly, and who shall choose to vote at any election, shall give to the sheriff, coroner, or justice, whoever may be the returning officer in presence of the inspectors, a ticket, or scrawl, of paper, rolled up, on which shall be written, the name, or names of the persons for whom he intends to vote; which ticket the said returning officer shall, in presence of the inspectors, put into the ballot box; and, at the same time, the clerks of election shall take down, on separate lists, the name of every person voting."

The fourth section of the act of 1819, being a subsequent one to that from which the foregoing extracts are taken, contains the following language. "In addition to the duties, heretofore required to be performed by the said managers of the elections, they shall, also, be, and, hereby, are required, to number the vote or ballot of each and every voter, with the same number that such voter stands marked, or enrolled, on the lists of the clerks to said elections: the votes from every place of holding said elections, after having been counted, shall be filed separately, for the space of twenty days—at the end of which time, the said votes shall be destroyed by the managers of the several elections; unless notice be given to said managers, that some part or parts of said election will be contested," &c.

In order to show, that the evidence offered below, should have been received, the plaintiff takes the following positions.

1st. The act of voting is complete, when the ticket of the voter is received by the managers of the election; and, the penalty for voting, without being legally qualified, is then incurred—whether the name of such voter be inserted in the list of voters, or not.

2d. The effect of a vote, if it can be ascertained to have been given, is the same, with and without the insertion of the name of the person who gave it, in the list of voters.

3d. The list of voters could not show, that any person, whose name was contained in it, had voted: without the ballot, or proof of its contents, it could not be shown, that the ticket was not a blank.

4th. The ballot of the defendant, was the only evidence, better than parol, to prove that he voted, as charged in the declaration : and, as it was proved that the ballots had been destroyed, parol proof, that the defendant voted by ballot, was competent, and ought to have been admitted.

5th. If the lists of voters were any part of the necessary evidence, to show that a person had voted, the statute which requires the votes to be destroyed, at the end of twenty days after an election, unless notice be given that the election will be contested, applies to the lists, and directs their destruction.

6th. As the evidence showed, that the ballots were destroyed, and law requires the destruction of the votes, the legal presumption is, that the managers did their duty, and destroyed the lists, if they be held to be part of the votes, as they must be, if they constitute a part of the written evidence of the votes.

With respect to the first position, it may be said, that the act of voting is not complete, until the ticket is put into the ballot-box; and, if, after this is done, it were to be taken out, without the name of the person offering it, being enterd on the lists; or, even if the name were entered on the lists, and erased, before proceeding further with the election—I doubt if it would constitute a vote, within the meaning of the act. Every person must offer to vote, before his right to do so, can be questioned, at the polls. Suppose an unqualified man were to offer a ballot, but his right to vote were denied, and the ballot not received, this would not make him a voter.—Suppose the ballot were received, but, before it was put in the box, his qualifications were determined to be insufficient, and the ballot were destroyed, without his name having been entered by the clerks—this would only constitute an attempt to vote : and, I think, any thing which would prevent the effort of the party from being successful, in getting his ballot to be received and regularly entered, as a vote, would be nothing more.— The legislature has made it the duty of officers, particularly appointed for that purpose, and sworn to act faithfully, to enter the name of every voter, at the time his vote is given in, on lists kept for that purpose. Unless his name is thus entered, he cannot be legally proved to be a voter. It is said, the clerks may, by mistake, omit the name of a voter:—Would it be right, because of this mere possibility, to incur the hazard of mistake, in receiving unwritten evidence? It is far less probable, that these sworn officers would make an omission, in which both must concur, than that parol testimony, that they had done so, would be wrong. The solemnity with which they are made

out—its being done by sworn officers, who are superintended by others, who are sworn also — give them the character of the highest grade of testimony. They are directed to be taken, for the express purpose of proving who did vote; and, being taken for that object, they are equally the highest evidence of that fact, as is any writing, of the contract which it expresses. In 'no case, strictly, is the writing the contract, but the evidence of it. So the insertion of the name of the voter, does not constitute the votes but it is the highest evidence of the person who gave it. It would follow, therefore, that no forfeiture is incurred, by voting without qualification, unless the voter's name be inserted on the lists kept by the clerks.

The views which have been taken of the first, will dispose of the second point. The ballot certainly cannot prove who voted; it is not made out with any such view. It is true, the law requires it to be numbered, with the number annexed to the name of the voter, on the lists; but, besides this number, it contains nothing but the names of those voted for : and, to arrive at a knowledge of the voter, it is necessary to compare the number on the ballot, with that on the lists. The ballot, without the lists, does not aid, in the slightest degree, in ascertaining who put it in.

But, it is said, the lists cannot show, that a vote was given, without resorting to the ballot, as that may have been blank. Were this admitted, it would only prove, that both must be introduced; but, the insertion of the name, on the lists would certainly be *prima facie* evidence, that an actual vote had been given.— Where the object of ballotting, is to effect an election,

it would be a most forced presumption, indeed, to suppose, that one who engaged in it, had no design at all. If a party would defend himself, on the ground that he had put in a blank ticket, he must prove that fact. But, as has been observed before, the ballot cannot prove who put it in—and the lists must be used, for that purpose.

As to the fourth point, it is only necessary to observe, that proof of what the ballots contained, made after they had been destroyed, could not do more than they could, if produced: and, as it has been shown, that they could afford no ground for a recovery without the lists, proof of their contents, could certainly effect no more than their production.

The fifth and sixth points will be considered together.

The lists, it is believed, constitute no part of the votes—the tickets, or ballots form these. The lists are precisely the same that they would be, if the voting were done *viva voce*. When the votes are directed to be destroyed, the tickets, only, are intended.— The evident object of the legislature makes this plain, if, otherwise, it could be doubtful. The great object of voting by ballot, is to enable the voters to conceal from others the persons for whom their votes have been given : this is thought to leave them more feer and unrestrained, in the exercise of this important privilege. But, even this object is made to yield to the importance of having the result of the election correctly ascertained. The ballots, therefore, are required to be numbered, that, in case of a contested election, it may be ascertained what votes were given, by those (if any such,) who were not entitled to vote at all; that, thus, the polls may be purged, and the

legal result ascertained. If no notice is given, in twenty days, that the election will be contested, it is required, that the "votes," or ballots should be destroyed, that the great object of this mode of election may be effected. But, the intention to keep secret, the vote of the citizen could not be promoted, by the destruction of the lists. The name of every voter is pronounced aloud, when he comes to the polls, and is written where all may see it; but none, neither the sheriff, who conducts, nor the manager, who inspects the election, has a right to examine his ballot.

If the lists constitute the best evidence of the persons who voted, no diligence is shown, in the bill of exceptions, to have been used by the plaintiff, to procure them, which would have authorised the reception of that which was of a secondary character.

The questions embraced by this case, were expressly decided, by this court, in *Olive* vs. *O'Riley*. a Miner's Rep. 410. Olive had sued O'Riley, to recover the penalty for voting at an election, without the legal qualification. On the trial, the plaintiff offered to prove, by a person said to have been present at the election, that the defendant voted: he, also, produced one of the inspectors, to prove the same fact. The evidence was rejected, on the ground, that one of the lists kept by the clerks, was the best evidence of this fact: and this court sustained the opinion of the Circuit court. The judgment is affirmed.